UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAMI L. BARBOUR,<br>      Plaintiff, | )<br>)<br>)<br>) | CIVIL ACTION NO. 4:20-CV-0861 |
| v. | )<br>) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1]<br>      Defendant | )<br>) | |

MEMORANDUM OPINION

I.     INTRODUCTION

Plaintiff Cami L. Barbour, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 8). After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence.

Accordingly, for the reasons stated herein the Commissioner's final decision will be VACATED, and this case will be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

II.   BACKGROUND & PROCEDURAL HISTORY

On January 5, 2017, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15, 88). In these applications, Plaintiff alleged she became disabled as of March 21, 2014, when she was 47 years old, due to the following conditions: COPD, hearing impairment, carpal tunnel syndrome, lower back pain, macular degeneration, arthritis, asthma, torn rotator cuff right shoulder, pulmonary nodules, and depression. (Admin. Tr. 88-89, 94, 207). Plaintiff received a GED in 1996. She attended Yorktowne Business Institute and received a certificate for medical billing technician in 2009 and for medical assistant in 2013. (Admin. Tr. 208). Before the onset of her impairments,

Plaintiff worked as a phlebotomist, a custodian, a home attendant, a general laborer, and a stock person in a warehouse. (Admin. Tr. 101-102).

On August 8, 2017, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 105-109). On September 28, 2017, Plaintiff requested an administrative hearing. (Admin. Tr. 116-119). On October 30, 2018 Plaintiff appeared with counsel, and testified during a hearing before Administrative Law Judge ("ALJ") Scott M. Staller. (Admin. Tr. 15). On January 14, 2019 the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 15-30). On February 1, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 167-169). On April 13, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-6).

On March 31, 2020, Plaintiff initiated this action by filing a complaint. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying her application is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1). As relief, Plaintiff requests that the Court remand the case for further proceedings with instructions to reassess Plaintiff's residual functional capacity and issue a new decision based on substantial evidence and proper legal standards. (Doc. 18, p. 15).

On November 4, 2020, the Commissioner filed an answer. (Doc. 16). In the answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id.* Along with the answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 17).

Plaintiff's Brief (Doc. 18), the Commissioner's Brief (Doc. 24), and the Plaintiff's Reply Brief (Doc. 27) have been filed. This matter is now ripe for decision.

III.   STANDARD OF REVIEW

    A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope

of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

      B.     STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on January 14, 2019.

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by

the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV. DISCUSSION

Plaintiff raises the following arguments in her statement of errors:

1. The residual functional capacity is not supported by substantial evidence; despite purporting to give "great weight" to the opinion of Dr. Huitt and finding it to be consistent with the record, the ALJ failed to include – or explain his failure to

>    include – standing/walking limitations within the residual functional capacity assessment.
>
> 2.   The ALJ erred in failing to include standing/walking limitations within the residual functional capacity assessment; the residual functional capacity assessment exceeds the standing/walking limitations of every medical opinion of record.

(Doc. 18, p. 5).

### A. THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his January 2019 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2018. (Admin. Tr. 17). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 21, 2014, Plaintiff's alleged onset date. *Id.* At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: sciatica, hearing loss, chronic obstructive pulmonary disease (COPD), macular degeneration, bilateral carpal tunnel syndrome (CTS) status post carpal tunnel release, bilateral cubital tunnel syndrome and obesity. *Id.* The ALJ found that, during the relevant period, Plaintiff had the following non-severe impairments: left foot fracture, gastroesophageal reflux

disease (GERD), goiter, hyperlipidemia, insomnia, and depression. (Admin. Tr. 17-20).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 20-21).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b), except:

> the claimant can frequently push or pull with bilateral upper extremities and bilateral lower extremities. The claimant can occasionally reach overhead with bilateral upper extremities and frequently reach in all other directions with bilateral upper extremities . The claimant can also frequently handle, finger and feel with bilateral upper extremities. The claimant can occasionally climb. She can frequently balance, stoop, kneel, crouch or crawl. The claimant is unable to use a telephone to communicate. The claimant is unable to read very small print, but can read ordinary newspaper or book print. She can view a computer screen and can determine differences in the shape and color of small objects, such as screws, nuts or bolts. The claimant can have occasional exposure to unprotected heights and dangerous moving machinery. The claimant can occasionally operate a motor vehicle. The claimant should [sic] have occasional exposure to humidity, wetness, extreme cold, extreme heat, vibrations, dust, fumes, gases, odors, poor ventilation and other pulmonary irritants. The claimant can tolerate a moderate noise environment, such as offices.

(Admin. Tr. 21).

At step four, the ALJ found that, Plaintiff could not engage in any past relevant work. (Admin. Tr. 28). At step five, the ALJ found that, considering Plaintiff's age, education, and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 28-29). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: housekeeping cleaner, DOT #323.687-014; office helper, DOT #239.567-010; and bindery machine feeder offbearer DOT #653.686-026. *Id*.

    B.    WHETHER THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Both of Plaintiff's arguments in her brief appear to be premised on the same error—the ALJ's failure to adequately explain or define the extent of Plaintiff's inability to stand and walk. When the court began its evaluation of these arguments, it became apparent that the decision leaves some ambiguities in the RFC assessment, rendering the decision unreviewable without clarification.

Pursuant to Social Security Ruling 96-8p, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." 1996 WL 362207. This ruling also states that:

> Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying pushing, and pulling. ***Each function must be considered separately*** (e.g., "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), even if the final RFC assessment will combine activities (e.g., "walk/stand, lift/carry, push/pull"). ***Although the regulations describing the exertional levels of work and the Dictionary of Occupational Titles and its related volumes pair some functions, it is not invariably the case that treating the activities together will result in the same decisional outcome as treating them separately***.

*Id.* (emphasis added). An ALJ's failure to conduct a function-by-function assessment does not require remand where the ALJ's decision is otherwise supported by substantial evidence. *See e.g., Cichocki v. Astrue*, 729 F.3d 172 (2d Cir. 2013).[3] However, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* at 177; *see also Cotter v. Harris*, 642 F.2d at 705 ("unless the Secretary has analyzed all the evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial

---

[3] In *Cichocki*, the Second Circuit was presented with a similar issue—the ALJ's failure to separately address sitting and standing—and concluded that the error was harmless. However, in *Cichocki*, the claimant "reported no limitations with respect to her ability to sit, stand, walk, kneel or climb stairs." *Cichocki v. Astrue*, No. 11-CV-755S, 2012 WL 3096428 at *9 (W.D. N.Y. July 30, 2012). Thus, this case is distinguishable from *Chichocki* on its facts.

evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"); *Evanitus v. Berryhill*, No. 3:16-CV-845, 2018 WL 1465276 (M.D. Pa. Feb. 28, 2018) (recommending remand due to the ALJ's failure to explain why limitations in the activities of bending, squatting, climbing, kneeling, and crawling assessed in a medical opinion accorded "great" weight were excluded from the RFC) *report and recommendation adopted by* 2018 WL 1453103 (M.D. Pa. Mar. 23, 2018).

I find that, considering the record in this case, the inadequacies in the ALJ's function-by-function assessment, and evaluation of the medical opinion evidence, frustrate meaningful judicial review. As noted by Plaintiff in her brief, the ALJ did not conduct a function-by-function assessment of two relevant activities—standing and walking. Similarly, the ALJ accorded "significant" weight to an opinion that addressed the functions separately (Dr. Huitt's opinion), and "some" weight that to an opinion addressed these functions together using the "and/or" connector (Dr. Bermudez's opinion).[4] Despite giving more weight to Dr. Huitt's opinion, the ALJ's

---

[4] Like the ALJ's RFC assessment, it is not clear whether Dr. Bermudez assessed that Plaintiff could stand for six hours *and* walk for six hours or stand for six hours *or* walk for six hours. *See Employers' Mut. Liab. Ins. Co. of Wisconsin v. Tollefsen*, 219 Wis. 434, 263 N.W. 376, 377 (1935) (describing "and/or" as a "befuddling, nameless thing" and "Janus-faced verbal monstrosity" that often does not express a clear meaning).

RFC assessment more closely resembles Dr. Bermudez's opinion. No explanation was provided as to why this was the case. Review of the decision as a whole provides little insight as to what the ALJ's rationale may have been.

Furthermore, there has been no development of the record as to whether the inability to stand for a full six hours, or the inability to walk for a full six hours, is vocationally significant to the performance of light work. This lack of development makes the VE testimony underlying the ALJ's conclusion unreliable.

V.  CONCLUSION

Accordingly, Plaintiff's request for the award of benefits, or in the alternative a new administrative hearing is GRANTED as follows:

(1) The final decision of the Commissioner will be VACATED, and this case will be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

(2) Final judgment will be issued in favor of Cami L. Barbour.

(3) An appropriate Order shall issue.

Date: September 30, 2021               BY THE COURT

                                       *s/William I. Arbuckle*
                                       William I. Arbuckle
                                       U.S. Magistrate Judge